# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

**REGINALD MORROW,**  }
                      }
   **Plaintiff,**    }
                      }
**v.**                }   **Case No.: 2:11-CV-355-RDP**
                      }
**MICHAEL J. ASTRUE,** }
**COMMISSIONER OF**   }
**SOCIAL SECURITY,**  }
                      }
   **Defendant.**    }

## MEMORANDUM OF DECISION

Plaintiff Reginald Morrow brings this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act") seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Supplemental Security Income. (Doc. #6 at 2); *see* 42 U.S.C. § 1383(c).  Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I. Proceedings Below

This action arises from Plaintiff's application for Social Security Supplemental Security Income ("SSI"), filed protectively on January 20, 2006,[1] alleging disability based on mental retardation and mood disorders beginning on January 1, 2006. (Tr. 80, 105).  That claim was denied on April 6, 2006.  (Tr. 82).  Plaintiff then requested and received a hearing before Administrative Law Judge Jack F. Ostrander on January 27, 2009 in Birmingham, Alabama. (Tr. 46).  In his decision, dated May 12, 2009, the Administrative Law Judge ("ALJ")

---

[1] Plaintiff had previously received child social security benefits. (Tr. 76-77).  Those benefits were due to expire in February 2006.  (Tr. 109).

determined that Plaintiff had not been under a disability within the meaning of the Act. (Tr. 29). Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on December 3, 2010. (Tr. 1). Because the denial of review by the Appeals Council constitutes the final act of the Commissioner, this case is now ripe for this court's review. 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff insinuated at the hearing that he might meet the requirements to be found mentally retarded as defined by Section 12.05C of the Listings, 20 C.F.R. § 404, Subpart P, Appendix 1.[2] (Tr. 50). To support his claim, Plaintiff directed the ALJ's attention to his I.Q. test scores. (*Id.*). The evidence in the record mentions three occasions on which Plaintiff was given an I.Q. evaluation. The first I.Q. examination occurred on April 17, 1992 in which Plaintiff was found to have a Verbal I.Q. of 75, a Performance I.Q. of 74, and a Full Scale I.Q. of 72. (Tr. 159). No direct report of that first I.Q. test appears in the record; but it was mentioned in the report for the second I.Q. examination, which was administered on September 24, 1996 by Marilyn H. Wisely. (*Id.*). Plaintiff was nine years old at the time and had been referred to Ms. Wisely by his teacher. (*Id.*). Four I.Q. tests were conducted during this evaluation, including the Wechsler Intelligence Scale for Children in which Plaintiff scored 67 in Verbal I.Q., 62 in Performance I.Q., and 62 in Full Scale I.Q. (Tr. 159-161). Ms. Wisely, however, cautioned in

---

[2] Plaintiff did not actually argue at the hearing that he meets the listing for mental retardation under Section 12.05C because he believed that the argument was precluded by Dr. Neville's finding that Plaintiff has borderline intellectual functioning. (Tr. 50-51). The Eleventh Circuit has stated, albeit in an unpublished decision, that a diagnosis of borderline intellectual functioning is "a diagnosis that is mutually exclusive of mental retardation." *Jordan v. Commissioner of Social Security*, 470 Fed. Appx. 766, 768 (11th Cir. 2012). Plaintiff appears to have conceded at the hearing that Dr. Neville's diagnosis of borderline intellectual functioning implicitly rules out a diagnosis of mental retardation, but nonetheless proceeded to suggest the notion to the ALJ and now presses this theory before this court. (Tr. 50-51).

her report that these scores likely under-represent Plaintiff's true abilities.  (Tr. 160).  When explaining why she held reservations about the results of this evaluation, Ms. Wisely noted that:

> [Plaintiff] often seemed uninterested during the evaluation and did not appear to be motivated to perform to the best of his ability. Rapport was difficult to establish and maintain during the evaluation. [Plaintiff] slouched in his chair and often looked down. He recalled and understood instructions without apparent difficulty. [Plaintiff] required encouragement to maintain his level of performance.

(*Id.*).

Plaintiff's third I.Q. evaluation was conducted by Dr. Cynthia A. Neville on March 27, 2006.  (Tr. 173).  Dr. Neville administered the Wechsler Adult Intelligence Scale, Third Edition (the "WAIS-III"), in which Plaintiff scored 73 in Verbal I.Q., 72 in Performance I.Q., and 70 in Full Scale I.Q.  (Tr. 175).  Dr. Neville noted, however, that Plaintiff "rushed through test items on the WAIS-III and was minimally cooperative."  (Tr. 174).  Dr. Neville's report indicates that Plaintiff "did not appear fully motivated to put forth his full effort" and "frequently declined to attempt tasks."  (Tr. 176, 174).  Therefore, Dr. Neville also cautioned that Plaintiff's scores in this evaluation "are viewed as an underestimate of his true intellectual level[,] which probably falls higher within the Borderline range."  (Tr. 176).  The ALJ considered these test results when determining Plaintiff's eligibility for disability.  (Tr. 22-23).

## II.  ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is

work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings").  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  The claimant bears the burden of proving that his impairments meets or medically equals a listed impairment.  *See Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).  A claimant meets a listing only if his impairments satisfy "all of the criteria of the listing, including any relevant criteria in the introduction."  20 C.F.R. § 416.925(c)(3); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  When determining a claimant's RFC, an ALJ considers all relevant evidence of impairment, including subjective claims of pain.  If a claimant alleges disabling pain, the ALJ must properly apply the Eleventh Circuit's pain standard when evaluating a claimants subjective allegations of pain.

In the fourth step, the ALJ determines whether the claimant's RFC allows the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In this case, the ALJ found that (1) Plaintiff has not engaged in substantial gainful activity since the application date, (2) Plaintiff does have severe impairments as manifested by his dysthymic disorder (depression), learning disorder, and borderline intellectual functioning; but (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 22-25). After reaching a determination regarding Plaintiff's RFC, the ALJ skipped step four because Plaintiff has no past relevant work experience and found under step five that Plaintiff is capable of performing work that exists in significant numbers in the national economy.

### III. Plaintiff's Argument

Plaintiff raises only one argument before the court. He challenges the ALJ's step three determination and argues that his impairments do meet the listed impairment of mental retardation under Section 12.05C of the Listings. (Pl.'s Mem. at 8).

### IV.  Standard of Review

Before the court delves into Plaintiff's argument, it is compelled to clarify one point. While Plaintiff has nominally stated his position to be that "the decision of the Commissioner is not supported by substantial evidence," his actual argument appears to be that he disagrees with the ALJ's step three determination and wants the court to re-evaluate the issue.  (*Compare* Pl.'s Mem. at 2 *with* Pl.'s Mem. at 8).  Plaintiff does not allege that the ALJ failed to apply the correct legal standards nor does he attempt to show that the ALJ's findings are unsupported by substantial evidence.  Rather, Plaintiff points to his IQ tests and invites the court to re-weigh the evidence and reach its own conclusion regarding whether Plaintiff's condition qualifies as mental retardation under Section 12.05C.  (Tr. 7-8).  This is an invitation the court must decline because such an investigation would require the court to tread outside its limited scope of appropriate review.

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

Substantial evidence is more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d at 1529. If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); s*ee also Martin,* 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005).

## V. Discussion

Plaintiff argues that his impairments should have been found to meet the listed impairment of Mental Retardation under Section 12.05C of the Listings, 20 C.F.R. § 404, Subpart P, Appendix 1. (Pl.'s Mem. at 8). As noted already, the court may not substitute its judgment for that of the ALJ and decide this issue anew. Rather, the court shall review the ALJ's determination to ensure that it is supported by substantial evidence and follows the proper legal standards.

Section 12.05C lists the following requirements for demonstrating Mental Retardation:

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. § 404, Subpart P, Appendix 1, Section 12.05. The fight in this case is over the first requirement that the claimant present a valid I.Q. score between 60 and 70 (inclusive). I.Q. scores from Plaintiff's 1996 and 2006 I.Q. evaluations do fall within this range.[3] The ALJ,

---

[3] Plaintiff's 1996 child Wechsler Intelligence Scale scores were 67 in Verbal I.Q., 62 in Performance I.Q., and 62 in Full Scale I.Q. (Tr. 159-161). Plaintiff's 2006 adult Wechsler Intelligence Scale scores were 73 in Verbal I.Q., 72 in Performance I.Q., and 70 in Full Scale I.Q. (Tr. 175).

however, found that these scores are not *valid* I.Q. scores because Plaintiff "did not put forth sufficient motivation or effort to obtain valid estimates of his intellectual functioning on those tests." (Tr. 25). In reaching this conclusion, the ALJ relied upon the reports of the I.Q. examiners, Dr. Neville and Ms. Wisely (Tr. 22-23, 25-27), who both indicated that Plaintiff did not put forth much effort in taking the test and that the test scores under-represent Plaintiff's actual abilities. (*See* Tr. 160, 176, 174).

In this circuit, it is recognized that the ALJ may dismiss I.Q. test scores as invalid so long as the ALJ's determination is supported by substantial evidence. *See e.g. Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986). In this case, when considering the validity of Plaintiff's I.Q. scores, the ALJ relied upon the reports of the examiners who administered the I.Q. tests. The fact that the examiners themselves questioned the validity of the scores provides substantial evidence in support of the ALJ's determination that the I.Q. scores are invalid. Because a claimant must satisfy all the criteria of a listing in order to meet that listing, Plaintiff's failure to satisfy the first criterion of Section 12.05C means that he cannot be found disabled under Section 12.05C. *See Sullivan*, 493 U.S. at 530. Therefore, the ALJ applied the correct legal standards when finding that Plaintiff's impairments do not meet or medically equal a listed impairment at step three of his analysis.

## VI. Conclusion

The court concludes that the ALJ's findings are supported by substantial evidence and the correct legal standards were applied. Therefore, the decision of the Commissioner is due to be affirmed. A separate order will be entered.

**DONE** and **ORDERED** this      13th       day of June, 2013.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE